**Glen Arlen HAY, Plaintiff-in-Error,**

v.

**The STATE of Oklahoma, Defendant-in-Error.**

**No. A–14646.**

Court of Criminal Appeals of Oklahoma.

Nov. 20, 1968.

Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen, for defendant in error.

BUSSEY, Judge.

Glen Arlen Hay, hereinafter referred to as Defendant, was charged by Information in the District Court of Roger Mills County with the crime of Assault and Battery with a Dangerous Weapon. The Information more specifically alleged that the defendant, on September 2, 1967, in said county, committed an assault and battery upon one Kenneth E. Rice by the use of shoes worn by the defendant and used by him in a manner likely to endanger the life of, and inflict great bodily injury to, this victim.

This case came on for trial by jury on November 6, 1967, and on that same date the jury returned a verdict finding the defendant guilty as charged in the Information and assessing his punishment at imprisonment in the State Penitentiary for a term of five years.

Thereafter, a Motion for New Trial was filed on the defendant's behalf. An Amendment thereof was subsequently filed, and still later a second such amendment was filed in the trial court. A hearing was had by the court upon these motions on November 21, 1967. At that time witnesses were put on by counsel for the defendant in support of his motions. At the conclusion of the hearing the court overruled the motions and entered an order to this effect. On that same date judgment and sentence was entered by the court in accordance with the jury's verdict. This appeal is brought from that judgment and sentence.

Briefly stated, the facts of this case are that the victim of the assault and battery in question, testified that on the evening of September 2, 1967, he went to the Rook Theatre in Cheyenne, Oklahoma, Roger Mills County, and that he had been there for some time when a man, identified by him as the defendant, came to where he was sitting and asked him to come to the lobby. In the lobby the defendant asked this witness if he had been following any girls. Upon receiving a negative answer, the defendant struck this man a blow to the head with his hand or fist. The defendant struck him several more blows outside the theatre, knocking him to the ground. The victim remembered very little thereafter except that he was eventually able to get to his feet, and later managed to get into his car and drove home. Thereafter his sister, brother and mother drove him to the hospital where he was treated for a broken leg, as well as for certain bruises about his body and head.

The witnesses Elmer Rook, Bobby Hooper and Frank Young testified that they observed substantially the things that the victim testified to about the blows struck by the defendant with his hands. They additionally testified that the defendant kicked this man more than once after he had knocked him to the ground.

It was the testimony of Dr. Frank D. Buster that he treated the victim at the hospital and that said victim had sustained a fracture of both bones of the lower right leg and that he had multiple bruises and abrasions about his head and body.

The principal evidence of the defense came from the testimony of Sandra and Pamela Vincent, ages 11 and 16 respectively. They both testified that they were in the Rook Theatre on the evening in question and that a man identified by them as

Kenneth Rice, the victim of the assault, appeared to be following Sandra. According to their testimony, Rice would sit as near to Sandra as he could, although at no time apparently did he sit directly beside her. They further testified that Sandra changed seats several times and that Rice did likewise. It is significant that they stated on cross-examination that Rice said nothing to them, nor did he put his hands on either of them. These two girls further testified that they reported this man's actions to their mother and she advised them to go back to the theatre. The defendant was present when they related same to their mother. He came into the theatre and had the girls point out Kenneth Rice to him. They did point Rice out to the defendant and the two men went out together.

It was defendant's own testimony that he overheard Sandra telling her mother about a man following her, that he followed Sandra back to the theatre and had her point the man out to him, that he asked the man to come outside and once outside he asked the man, Kenneth Rice, if he had been following the girls. Upon receiving the answer, "I never touched them," the defendant, according to his testimony, slapped him down. The defendant denied that he kicked Rice.

On appeal, the defendant's first proposition is that the trial court erred in overruling defense counsel's request for a continuance of the trial until the next jury docket.

▮ It appears from counsel's Motion for Continuance and from the facts brought out at the hearing on such motion that the defendant was afforded a preliminary hearing on October 20, 1967, that he was bound over for trial in the District Court where he was arraigned, in the company of his attorney, on October 23, 1967, and that at that time the court ordered the case set for trial on November 6, 1967. The matter was tried on the last mentioned date, some 17 days after preliminary hearing. Upon his mere assertion that this period of time did not afford him an opportunity

to properly prepare a defense, counsel requested the trial court to continue the case until the next jury docket and now urges this Court that the trial court committed reversible error in not granting such continuance.

We have repeatedly held that:

"An application for continuance on the ground of want of time to prepare for trial, is addressed to the sound discretion of the trial court, and the ruling of that court will not be disturbed on appeal, unless an abuse of discretion is shown."

See Garrison v. State, 57 Okl.Cr. 230, 47 P.2d 224, cited with approval in Stallings v. State, Okl.Cr.App., 344 P.2d 1067. The defendant devotes only one paragraph in his brief to this proposition, and no suggestion is made as to any additional witnesses that might have been called or as to how the case would have been handled differently than the manner in which it was actually handled, had there been more time.

Thus, it can be seen that no flagrant abuse of discretion is shown, and it is our opinion that this assignment of error is wholly without merit.

▮ This leads us to defendant's second proposition that the trial court committed reversible error in not permitting Gertrude Vincent to testify as to what her daughter Sandra told her, just prior to the incident in question, concerning Rice's alleged actions of following the girl. This testimony clearly falls within the hearsay doctrine, and we have repeatedly held that:

"The reception of hearsay evidence over objection is error. Whether it is reversible error depends upon all facts and circumstances of the case and the prejudicial effect which the reception of such evidence might have had on the jury."

See Maiden v. State, Okl.Cr.App., 273 P.2d 774, cited with approval in Young v. State, Okl.Cr.App., 373 P.2d 273.

▮ In the instant case the trial judge correctly sustained the prosecuting attor-

ney's objection to the hearsay testimony which was attempted to be given by Gertrude Vincent, and we are of the opinion that this assignment of error is without merit.

It is next urged by defendant that the trial court erred in giving Instruction No. 5, which is as follows:

"A 'dangerous weapon' within the meaning of the statute in the foregoing instruction is one likely to produce death or great bodily injury by use made of it or one which endangers life or inflicts great bodily harm in the manner it is used or attempted to be used.

A shoe or shoes are not dangerous weapons in and of themselves, but the manner of their use might make them dangerous weapons."

The foregoing instruction referred to in Instruction No. 5 is Instruction No. 4, which in turn quotes 21 O.S. § 645, the same providing as follows:

"Every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without the intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five (5) years, or by imprisonment in a county jail not exceeding one (1) year."

█ █  In regard to the precise question involved here, the very case that counsel cites as his authority, Smith v. State, 79 Okl.Cr. 151, 152 P.2d 279, sets forth principles of law that defeat the defendant's contention. The fourth and fifth paragraphs of the syllabus of that opinion advise:

"The manner of use of an instrument may be controlling factor in determining whether it is a 'dangerous weapon,' with-

in statute providing punishment for assault with a dangerous weapon.

A pair of shoes are not dangerous weapons, per se. Their manner of use may constitute their becoming a dangerous weapon."

And further, we find this significant language in the body of that opinion:

"Under the law, a pair of shoes, such as worn by the defendant, are not a dangerous weapon per se. There can be no question but that by their manner of use they might under certain circumstances become a dangerous weapon; as for instance, where the evidence revealed that they were used to stomp one to death, or to inflict great bodily injury. The manner of their use would determine the fact as to whether or not they were a dangerous weapon. Some of the later cases decided by this court have discussed this statute. We cite them without quoting therefrom: Palmer v. State [78 Okl.Cr. 220] 146 P.2d 592; Tipler v. State [78 Okl.Cr. 85] 143 P.2d 829; Bean v. State [77 Okl.Cr. 73] 138 P.2d 563; Beck v. State, 73 Okl.Cr. 229, 119 P.2d 865; Reardon v. State, 51 Okl. Cr. 432, 2 P.2d 100."

This Court simply found in the *Smith* case that the evidence was insufficient to support a verdict of guilty of the crime of assault and battery with a dangerous weapon. Such evidence showed conclusively that the main injury inflicted upon the prosecuting witness was the breaking of her jaw, which was done by the defendant striking her with his fist. There was no evidence on the part of the State that the using of the shoes of defendant caused the injury complained of.

█  In the case at bar the information charged in relevant part that the dangerous weapons that inflicted the injury to Kenneth Rice were the shoes on the feet of the defendant,

"the same not being dangerous weapons per se, but used by said defendant in a manner likely to endanger the life of and inflict great bodily injury to said Ken-

neth E. Rice, and with which the said defendant did then and there kick and stomped the said Kenneth E. Rice on and about the body and legs with great force and violence, breaking the right leg of the said Kenneth E. Rice with the unlawful and felonious intent then and there to do him great bodily harm,

\* \* \*"

Certainly this charge was legally sufficient, as was the instruction of the trial court relating thereto, for the law in this regard is the same today as it was when this Court wrote its decision in *Smith*, supra. The case of Bald Eagle v. State, Okl. Cr.App., 355 P.2d 1015 (1960), states this in the first paragraph of the syllabus:

"An information alleging that a defendant assaulted the victim with a beer bottle by beating and hitting him on the head and body, with intent to injure the said person, sufficiently alleges the use made of said bottle to convert the same into a dangerous instrument under 21 O.S.A. § 645."

For all of the foregoing reasons, we are of the opinion that this assignment of error is without merit.

Defendant lastly contends that the spectators at the trial were so unruly that their actions deprived the defendant of a fair trial, and in support of his contention, counsel for defendant merely quotes the testimony of the mother of the defendant which was given at the hearing on the Motion for New Trial. The substance of this testimony is that the courtroom was very crowded and that this witness heard noises from certain of the spectators near her which tended to indicate that these spectators favored the prosecution's presentation and looked unkindly toward that of the defendant. Based on the testimony of the defendant's mother, who most assuredly has an interest in this case, counsel would have this Court overturn the conviction.

This completely disregards the testimony of one who must be deemed to be an impartial observer of the trial court proceedings—the trial judge himself. The following is his testimony in this regard (CM 152–153):

"I believe the court during the conduct of the trial in this case against the defendant, Glen Arlen Hay, did his best to see that a fair trial was had.

MR. MEACHAM: We will stipulate to that.

THE COURT: The court seems to recall that maybe several times the court did use his gavel to see that quiet and order were maintained in the court room, but the court never personally ever heard any statements or demonstrations or remarks, or murmuring at any time during the trial that indicated anything to the court, nor was during the course of the trial anything of that nature ever called to the court's attention.

I might also state in the record that the court does have a gavel on the Judge's Bench and uses it when he deems it necessary to maintain proper order in the court room. Now gentlemen, that would be my statement from sitting up here of the things I saw and observed as best I can recall them this date."

It is inconceivable that the "mob-like" conduct of the courtroom crowd, as suggested by counsel in his brief, would go undetected by the trial judge. It is further significant that counsel apparently could find no disinterested witnesses to such alleged "mob-like" atmosphere surrounding this trial.

Finding this assignment of error without merit, we are of the opinion that the defendant had a fair and impartial trial, the issues were properly submitted to the jury, and the evidence amply supports the verdict. The judgment and sentence appealed from is affirmed.

We were materially aided in arriving at this decision by the excellent brief filed on behalf of the State of Oklahoma, by and through its Assistant Attorney General,

Mr. Charles L. Owens, and we commend him in his diligence in the preparation of the same.

NIX, P. J., and BRETT, J., concur.